**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GARY L. BENNER,                                )        NO. CV 04-7389 FMO
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )        **ORDER RE:  JOINT STIPULATION**
                                               )
JO ANNE B. BARNHART,                           )
COMMISSIONER OF SOCIAL                         )
SECURITY ADMINISTRATION,                       )
                                               )
                    Defendant.                 )
_____        )

**PROCEEDINGS**

       Plaintiff filed a Complaint on September 8, 2004, seeking review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of his application for

Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C.

§ 405(g) ("Act").  Thereafter, the parties consented to proceed before the undersigned United

States Magistrate Judge.  On December 21, 2005, the parties filed a Joint Stipulation ("Joint

Stip.").  The court has taken the matter under submission without oral argument.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

       To be eligible for disability benefits, a claimant must demonstrate a medically determinable

impairment which prevents the claimant from engaging in substantial gainful activity and which

1  is expected to result in death or to last for a continuous period of at least 12 months.  42 U.S.C.

2  § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

3          Disability claims are evaluated using a five-step test:

4          Step one:      Is the claimant engaging in substantial gainful activity?  If so,
                          the claimant is found not disabled.  If not, proceed to step two.
5
6          Step two:      Does the claimant have a "severe" impairment? If so, proceed
                          to  step  three.    If  not,  then  a  finding  of  not  disabled  is
                          appropriate.
7
8          Step three:    Does the claimant's impairment or combination of impairments
                          meet or equal an impairment listed in 20 C.F.R., Part 404,
                          Subpart P, Appendix 1?  If so, the claimant is automatically
9                         determined to be disabled.  If not, proceed to step four.

10         Step four:     Is the claimant capable of performing his past work?  If so, the
                          claimant is not disabled.  If not, proceed to step five.
11
12         Step five:     Does the claimant have the residual functional capacity to
                          perform any other work? If so, the claimant is not disabled.  If
                          not, the claimant is disabled.
13

14  20 C.F.R. § 416.920; Tackett, 180 F.3d at 1098-99.  If a claimant is found "disabled" or "not

15  disabled" at any step, there is no need to complete further steps. 20 C.F.R. § 404.1520; Tackett,

16  180 F.3d at 1098.

17                  **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

18          Plaintiff, who was 57 years of age on the date of his administrative hearing, has a high

19  school education, a college education with a degree in environmental design, and vocational

20  training in tour management.  (Administrative Record ("AR") at 18, 62 & 377-78).  His past

21  relevant employment includes work as a trade show sales representative, a tour guide, a travel

22  director, a corporate travel coordinator, and an exhibit designer. (Id. at 18, 57, 105-08, 122, 379-

23  83 & 399-400).

24          Plaintiff filed an application for DIB on June 26, 2001, alleging that he has been disabled

25  since February 13, 2001, due to a number of infirmities, including osteoarthritis, hypertension,

26  diabetes, constant pain in his neck, right shoulder, arm, hand, hip, leg, and ankle, stiffness in his

27  right hand and fingers, severe headaches, spasms, limited mobility in his neck, right shoulder,

28  arm, hand, and leg, difficulties in standing, walking, and sitting, depression, and problems with

2

1    concentration and memory.  (AR at 17-18, 46-48 & 56).  His application was denied initially and

2    on reconsideration.  (Id. at 17, 33-36 & 39-42).  On June 13, 2003, plaintiff, represented by

3    counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ").  (Id. at

4    17, 25 & 374-76).  The ALJ also heard testimony from Ruth Arnush, a vocational expert ("VE").

5    (Id. at 17, 44 & 374-76).

6         The ALJ denied plaintiff's request for DIB on July 21, 2003.  (AR at 5 & 14-23).  Applying

7    the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not

8    engaged in substantial gainful activity since his alleged onset date of disability.  (Id. at 18 & 22).

9    At step two, the ALJ found that plaintiff "has a physical impairment or a combination of physical

10   impairments considered 'severe.'"[1]  (Id. at 22).  At step three, the ALJ determined that plaintiff's

11   impairments, either individually or in combination, do not meet or equal the severity of any listing

12   set forth in the Social Security regulations.[2]  (Id. at 18 & 22).

13        The ALJ then assessed plaintiff's residual functional capacity[3] ("RFC").  (AR at 20 & 22-23).

14   Specifically, the ALJ found that plaintiff retains the RFC to "perform a significant range of

15   sedentary work," including the ability to "lift and carry 20 pounds occasionally and 10 pounds

16   frequently," and "sit, stand and walk 4 hours in an 8-hour workday with normal breaks."  (Id.).  The

17   ALJ further noted that plaintiff needs "an assistive device for prolonged ambulation" and "has

18   difficulty kneeling and squatting."  (Id. at 20 & 23).  Based on this RFC and the testimony of the

19   VE, the ALJ determined at step four that plaintiff could not perform his past relevant work.  (Id.

20   at 18, 21 & 23).

21        At step five, the ALJ found that plaintiff is an individual "of advanced age," has more than

22   a high school education, and has transferable skills from his past relevant work.  (AR at 21 & 23).

23   Using the Medical Vocational Guidelines as a "framework for decision-making," as well as the

24   _____

25        [1]   In his decision, the ALJ did not detail what physical impairments he found to be severe.
     (See AR at 17-23).

26        [2]   See 20 C.F.R. Pt 404, Subpt. P, App. 1.

27

28        [3]   Residual functional capacity is what a claimant can still do despite existing exertional and
     nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

1   VE's testimony, the ALJ determined that plaintiff retained the capacity to perform the job of travel

2   agent. (Id. at 21-23). Accordingly, the ALJ concluded that plaintiff was not suffering from a

3   disability as defined by the Act. (Id. at 17-18 & 22-23).

4         Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the

5   Appeals Council. (AR at 5-7 & 12-13). The ALJ's decision stands as the final decision of the

6   Commissioner.

7                         **STANDARD OF REVIEW**

8         Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny

9   benefits. The ALJ's findings and decision must be upheld if they are free of legal error and

10   supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

11   If the court, however, determines that the ALJ's findings are based on legal error or are not

12   supported by substantial evidence in the record, the court may reject the findings and set aside

13   the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001);

14   Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

15         "Substantial evidence is more than a mere scintilla, but less than a preponderance."

16   Aukland, 257 F.3d at 1035. It is such "relevant evidence which a reasonable person might accept

17   as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see

18   also Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

19   finding, the reviewing court must review the administrative record as a whole, "weighing both the

20   evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276

21   F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of

22   supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240,

23   1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the

24   ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id.

25   (quoting Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).

26   / / /

27   / / /

28

**DISCUSSION**

I.      THE ALJ IMPROPERLY CONCLUDED THAT PLAINTIFF COULD PERFORM THE JOB
        OF TRAVEL AGENT.

Plaintiff contends that the ALJ erred in his step-five determination by concluding that plaintiff could perform a significant number of jobs in the national economy, including the job of travel agent. (Joint Stip. at 6-9 & 13). Specifically, plaintiff argues that the ALJ failed to make any findings identifying the specific skills plaintiff acquired in his past work that would be transferable to the position of travel agent. (Id. at 7-8). Plaintiff also asserts that the ALJ failed to make any findings as to whether "there would be very little, if any, vocational adjustment required upon entry into the position of travel agent." (Id. at 6). In light of these errors, plaintiff requests that the court reverse and remand the final decision of the Commissioner, as that decision was not supported by substantial evidence. (Id. at 9 & 13).

"Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled." Social Security Ruling ("SSR") 82-41,[4] 1982 WL 31389 at *1. Here, transferability of skills is an issue because the ALJ determined that although plaintiff's severe impairments, either individually or in combination, did not meet or equal the severity of any listing set forth in the Social Security regulations, they did prevent him from returning to his past relevant work, which was identified as skilled work by the VE. (See AR at 399-400) (finding

---

[4]      "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

1  positions of trade show sales representative, tour guide, travel director, and corporate travel

2  coordinator to be skilled positions[5]).

3      "Transferability means applying work skills which a person has demonstrated in

4  vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR

5  82-41, 1982 WL 31389 at *2; see also 20 C.F.R. § 404.1568(d)(1) ("What we mean by

6  transferable skills.  We consider you to have skills that can be used in other jobs, when the skilled

7  or semi-skilled work activities you did in past work can be used to meet the requirements of skilled

8  or semi-skilled work activities of other jobs or kinds of work.").  Transferability "depends largely

9  on the similarity of occupationally significant work activities among different jobs."  20 C.F.R. §

10  404.1568(d)(1).  For example, transferability of skills is considered most probable between jobs

11  in which:  (1) "[t]he same or a lesser degree of skill is required;" (2) "[t]he same or similar tools and

12  machines are used;" and (3) "[t]he same or similar raw materials, products, processes, or services

13  are involved."  20 C.F.R. § 404.1568(d)(2).

14      Advancing age is also "an important factor[ ] associated with transferability," because

15  "advancing age decreases the possibility of making a successful vocational adjustment."  SSR 82-

16  41, 1982 WL 31389 at *5; see also 20 C.F.R. § 404.1563(e) ("We consider that at advanced age

17  (age 55 or older) age significantly affects a person's ability to adjust to other work.  We have

18  special rules for persons of advanced age[.]"); Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir.

19  1990) ("As age is one of the factors that must be considered, it should surprise no one that the

20  Secretary faces a more stringent burden when denying disability benefits to older claimants.").

21  Therefore, in order to find transferability of skills to skilled or semi-skilled sedentary work for

22  individuals age 55 and over, "there must be very little, if any, vocational adjustment required in

23  terms of tools, work processes, work settings or the industry."  SSR 82-41, 1982 WL 31389 at *5;

24  see also 20 C.F.R. § 404.1563(d)(4) ("[i]f you are of advanced age and you have a severe

25

26  ────────────────

27  [5]  Although the VE found the position of exhibit designer to be unskilled, the VE also stated that the position was "sufficiently different from [plaintiff's] education and prior work history to, perhaps, not consider it."  (AR at 400).  The VE also agreed that plaintiff had not performed the

28  position of exhibit designer for longer than two and a half months.  (Id.).

6

1   impairment(s) that limits you to no more than sedentary work, we will find that you have skills that

2   are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar

3   to your previous work that you would need to make very little, if any, vocational adjustment in

4   terms of tools, work processes, work settings, or the industry.").  In other words, the semi-skilled

5   or skilled job duties from a plaintiff's past relevant work "must be so closely related to other jobs

6   which [the plaintiff] can perform that [he or she] could be expected to perform these other

7   identified jobs at a high degree of proficiency with a minimal amount of job orientation."  SSR 82-

8   41, 1982 WL 31389 at *5.

9          It is important for an ALJ to make specific findings of fact when addressing transferability

10  of skills.  SSR 82-41, 1982 WL 31389 at *7 ("It is important that these findings be made at all

11  levels of adjudication to clearly establish the basis for the determination or decision for the

12  [plaintiff] and for a reviewing body including a Federal district court.").  Specifically, "when a finding

13  is made that a claimant has transferable skills, the acquired work skills must be identified."  Id.

14  In addition, in cases involving individuals of advanced age, the ALJ "must make a specific finding

15  as to the amount of vocational adjustment required."  Coletta v. Massanari, 163 F.Supp.2d 1101,

16  1105 (N.D. Cal. 2001) (it is not enough that the ALJ mentioned plaintiff's age in the decision, as

17  the ALJ was required to make a specific finding regarding vocational adjustment); see also

18  Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986) (per curiam) ("the ALJ must either make

19  a finding of very little vocational adjustment or otherwise acknowledge that a more stringent test

20  is being applied which takes into consideration [a plaintiff's] age.") (internal quotation marks

21  omitted)); Greenwood v. Chater, 1996 WL 945021 at *8 (C.D. Cal. 1996) ("In this case, the ALJ

22  erred by failing to make specific findings with respect to vocational adjustment."); Coakley v.

23  Chater, 1995 WL 584649 at *5 (D. Or. 1995) ("The findings of the Commissioner are insufficient

24  with regard to whether or not the options for alternate skilled sedentary work require very little

25  vocational adjustment, and therefore the court remands this case to the ALJ for a more specific

26  finding on this issue.").

27         Here, the ALJ failed to make an appropriate evaluation or appropriate findings at step five.

28  Indeed, although transferability of skills was an issue in this case, neither the VE or the ALJ

1   identified the skills plaintiff acquired in his past relevant work that would transfer to the position

2   of travel agent.  Specifically, at the administrative hearing, the ALJ questioned the VE as follows:

3   [ALJ]:      . . . Would there be any skills that we could impart to the

4               claimant through his experience in any of these jobs that would

5               transfer to other jobs at the light or sedentary levels, with this

6               profile that I'[ve] just given you, hypothetical two?

7   [VE]:       Could I have a minute?

8   [ALJ]:      Sure.

9                            * * *

10  [ALJ]:      Okay, Ms. Arnush, any, any skills transferability here into the

11              second hypothetical?

12  [VE]:       Yes, because of his extensive experience in the tour and travel

13              industry, his skills would directly transfer to the job of a travel

14              agent, at the sedentary level.

15  (AR at 401-02).  Based on this testimony, the ALJ then determined that:

16              The vocational expert also testified in response to the above question

17          that such a hypothetical individual would have skills transferable from

18          [plaintiff's] past relevant work to the job of travel agent, DOT 252.152-010,

19          a sedentary, semi-skilled SVP 5 job, of which there are 19,537 jobs in the

20          local economy and 51,239 jobs nationally.  The vocational expert further

21          testified that this job could be performed even with mild-to-moderate

22          controlled pain.  I give weight to the expert vocational testimony and find that

23          considering [plaintiff's] age, educational background, work experience, and

24          residual functional capacity, he is capable of making a successful adjustment

25          to work that exists in significant numbers in the national economy.

26  (Id. at 22).  While the VE generally discussed "transferable skills" and the ALJ made a general

27  finding plaintiff's skills from his past relevant work were transferable to the job of travel agent,

28  there was never any finding identifying what specific transferable skills plaintiff possessed.  See

1    SSR 82-41, 1982 WL 31389 at *7 ("when a finding is made that a claimant has transferable skills,

2    the acquired work skills must be identified.").

3          Furthermore, the VE and the ALJ failed to consider vocational adjustment in plaintiff's case,

4    which was necessary because plaintiff is an individual of advanced age.  Specifically, there was

5    no testimony from the VE at the administrative hearing regarding vocational adjustment.  (See AR

6    at 399-404).  In addition, in his decision, the ALJ only mentioned plaintiff's age and found plaintiff

7    "capable of making a successful adjustment to work."  (Id. at 22).  However, as to vocational

8    adjustment, the ALJ was required to "either make a finding of very little vocational adjustment or

9    otherwise acknowledge that a more stringent test [was] being applied which takes into

10   consideration [plaintiff's] age."  Renner, 786 F.2d at 1424; see also Coletta, 163 F.Supp.2d at

11   1105 (it is not enough that the ALJ mentioned plaintiff's age in the decision, as the ALJ was

12   required to make a specific finding regarding vocational adjustment).  The ALJ failed to make such

13   a finding here, which was particularly important where plaintiff was found capable of less than the

14   full range of sedentary work.  See Terry, 903 F.2d at 1275 (the vocational adjustment finding

15   "applies with even more force to Terry, as she is capable of no light work, and less than the full

16   range of sedentary work.").

17         In short, the ALJ's determination at step five was not supported by substantial evidence

18   and is reversed.

19   II.    REMAND IS REQUIRED.

20         The court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

21   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

22   proceedings, or where the record has been fully developed, it is appropriate to exercise this

23   discretion to direct an immediate award of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 595-

24   96 (9th Cir. 2004); Harmon v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.), cert. denied, 531 U.S.

25   1038, 121 S.Ct. 628 (2000).  Where there are outstanding issues that must be resolved before

26   a determination can be made, and it is not clear from the record that the ALJ would be required

27   to find plaintiff disabled if all the evidence where properly evaluated, remand is appropriate.  See

28   Benecke, 379 F.3d at 595-96; Harmon, 211 F.3d at 1179-80.

1    In plaintiff's case there remain outstanding issues, which must be resolved before a final

2    determination can be made.  Here, the ALJ erred at step five of the sequential evaluation process.

3    On remand, the ALJ is directed to obtain evidence from a vocational expert to determine whether

4    plaintiff has acquired any skills that are transferable with very little, if any, vocational adjustment

5    to other occupations.  The ALJ must then reassess step five and set forth specific and appropriate

6    findings in making the step five determination.

7    The court does not intend this decision for publication.

8    Based on the foregoing, IT IS ORDERED THAT Judgment shall be entered **reversing** the

9    decision of the Commissioner denying benefits and **remanding** the matter for further

10   administrative action consistent with this decision.

11   Dated this 31st day of January, 2006.

12                                                  /s/

13                                          Fernando M. Olguin
                                     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28